**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PATRICIA MAHON,

               Plaintiff,

vs.                                     Case No.  8:14-cv-547-T-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.

_____/

**OPINION AND ORDER**[1]

**I. Status**

Patricia Mahon ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is based on "mental health impairments and calluses on [her] feet." Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed May 22, 2014, at 64. On May 24, 2010, Plaintiff filed an application for DIB, alleging an onset disability date of July 15, 2009. Tr. at 113-14. Plaintiff's application was denied initially, see Tr. at 65-67, and was denied upon reconsideration, see Tr. at 70-71.

On April 19, 2012, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who was accompanied by a non-attorney representative, and a vocational expert ("VE") testified. Tr. at 29-57. At the time of the hearing, Plaintiff was sixty-two years old.

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed May 28, 2014; Reference Order (Doc. No. 16), entered June 4, 2014.

Tr. at 33 (reflecting Plaintiff's date of birth).  On May 10, 2012, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision.  Tr. at 13-23.  The Appeals Council received from Plaintiff and incorporated into the administrative transcript a brief from her non-attorney representative.  See Tr. at 5 (Order of Appeals Council), 204-06 (non-attorney representative brief).  On January 9, 2014, the Appeals Council denied Plaintiff's request for review, see Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner.  On March 5, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: 1) whether the ALJ failed to properly consider "the variability symptoms and limitations associated with [P]laintiff's bipolar disorder"; and 2) whether the ALJ erred in his assessment of the medical opinion authored by Don DelBeato, Ph.D.  Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 24; "Pl.'s Mem."), filed September 22, 2014, at 2.  On November 21, 2014, Defendant responded to these issues by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 27; "Def.'s Mem.").  After being granted permission to do so, Plaintiff filed a Reply Brief (Doc. No. 30; "Pl.'s Reply") on December 11, 2014.  After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned determines the Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.[2]

---

[2]    In responding to an argument made by Defendant in her Memorandum, Plaintiff contends in the Reply that the Social Security Administration's "demonstrably false claim that the ALJ properly denied Plaintiff's claim because she was looking for 'full-time work' is not a basis to affirm the ALJ's [D]ecision."  Pl.'s Reply at 2 (emphasis omitted).  Given that remand is necessary based on the

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 15-23.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 15, 2009, the alleged onset date."  Tr. at 15 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: depression, bipolar disorder, anxiety, and posttraumatic stress disorder."  Tr. at 15 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

---

issues raised by Plaintiff in her Memorandum, and given that the ALJ will be directed to reconsider the medical opinions in the record on which these arguments rely, the undersigned need not specifically address this contention.

[3]        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 16 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to simple, repetitive tasks; can handle no more than ordinary and routine changes in work setting or duties; is unable to meet rapid production or rapid quotas; can handle no more than occasional interaction with the public, coworkers, and supervisors; and can maintain attention and concentration for two hours, but then requires a 10-minute break.

Tr. at 18 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work." Tr. at 21 (emphasis and citation omitted). At step five, after considering Plaintiff's age (fifty-nine on the alleged disability onset date), education ("at least a high school education"), work experience, and RFC, the ALJ determined "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 22 (emphasis and citations omitted). Relying on the testimony of the VE, the ALJ cited to representative jobs such as "Cleaner/Housekeeper"; "Officer Helper"; and "Stock Checker." Tr. at 23. The ALJ concluded, therefore, that Plaintiff "has not been under a disability . . . from July 15, 2009, through the date of th[e D]ecision." Tr. at 23 (emphasis and citation omitted).

## III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ."

Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff raises two issues on appeal. Both issues focus on whether the ALJ erred in consideration of the medical opinions in the record regarding Plaintiff's bipolar disorder, see Pl.'s Mem. at 5-11, so the issues are addressed together. In support of her position, Plaintiff provides a detailed summary of the medical opinions of B.J. Hatton, Ph.D.; Don DelBeato, Ph.D.; and Luis C. Rodriguez, M.D. Id. at 7-11. In substance, Plaintiff argues that these opinions show the variability of her symptoms caused by her

bipolar disorder and how the disorder affects her functioning.  Id. at 7.  Upon review, the undersigned finds that the ALJ erred.  An analysis follows.

On July 7, 2010, Dr. Hatton, an examining physician, evaluated Plaintiff.  See Tr. at 309-14.  Dr. Hatton diagnosed Plaintiff with, inter alia, "Bipolar Disorder, Mixed, Severe"; "Post Traumatic Stress Disorder"; "Anxiety Disorder, NOS"; and "Calluses on her feet."  Tr. at 313.  Dr. Hatton indicated that during the examination, Plaintiff's "hands were constantly moving . . . in an anxious, nervous type of habit," and that Plaintiff "appear[ed] to be anxious and somewhat depressed."  Tr. at 313.  It was Dr. Hatton's opinion that Plaintiff "may experience difficulties with her short-term memory."  Tr. at 313.  Dr. Hatton noted that Plaintiff's "prognosis for [her] ability to maintain in a competitive work situation [wa]s guarded."  Tr. at 313.  It was further noted that Plaintiff "appear[ed] to have significant anxiety with symptomatology consistent with Bipolar Disorder."  Tr. at 313.  Dr. Hatton assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55.  Tr. at 313.

On September 27, 2011, Dr. DelBeato, an examining physician, evaluated Plaintiff and diagnosed with her with, inter alia, "Bipolar I disorder, predominantly depressed with mixed features" and "Anxiety Disorder."  Tr. at 349.  Dr. DelBeato assessed Plaintiff's GAF score at 48.  Tr. at 349.  He noted that "[d]uring the session[, Plaintiff wa]s constantly rubbing herself and scratching her[]self all over her body."  Tr. at 348.  According to DelBeato, Plaintiff reported to him that she had "mood swings at times that may be anger or very hyperactive behavior where she will clean incessantly," but also that "[t]here [we]re times that she does not clean at all."  Tr. at 348.  Dr. DelBeato indicated Plaintiff's "[c]oncentration [wa]s poor due to anxiety."  Tr. at 348.  He opined that Plaintiff's

"[p]rognosis for rehabilitation [wa]s poor." Tr. at 349. Dr. DelBeato stated that Plaintiff's "bipolar disorder . . . presents a significant barrier to stable employment," and that she has "a high risk to decompensate in a work environment." Tr. at 349. Dr. DelBeato also completed a Medical Source Statement, in which he assessed mild to marked limitations in certain areas of functioning. Tr. at 350-52.

Dr. Rodriguez reviewed and approved the treatment notes of treating nurse practitioner Alma Reif, MSN, ARNP, who provided Plaintiff with 20-minute supportive psychotherapy and medication management sessions on about a one-to-two month basis from February 20, 2010 through February 1, 2011. See Tr. at 338-39 (7/26/2010[4]), 340-41 (9/20/2010), 364-65 (1/12/2011), 366-67 (11/15/2010), 368-69 (9/20/2010), 372-73 (5/25/2010), 374-75 (3/30/2010), 376-77 (2/2/2010).[5] The notes reveal Plaintiff's fluctuation between "moderately impaired" and "severely impaired" in five categories: work, social life, leisure activities, family life, and home responsibilities. See Tr. at 338-39,[6] 340-41, 366-67, 368-69, 372-73, 374-75, 376-77. The notes also reflect Plaintiff's complaints and results of a mental status exam performed on every visit. See Tr. at 338-39,[7] 340-41, 364-65, 366-67, 368-69, 372-73, 374-75, 376-77.

---

[4]     Duplicate found at Tr. at 370-71.

[5]     Nurse Practitioner Reif actually began seeing Plaintiff in 2009. Tr. at 286-87 (12/14/2009), 288-89 (10/15/2009), 291-93 (8/4/2009), 294-95 (7/7/2009), 296-97 (6/3/2009), 298-99 (5/7/2009), 300-01 (2/26/2009), 302-03 (1/5/2009). Those notes, however, do not indicate that they were reviewed and approved by Dr. Rodriguez, although in the upper left-hand corner of the notes, it shows they were faxed from Dr. Rodriguez. See id.

[6]     Duplicate found at Tr. at 370-71.

[7]     Duplicate found at Tr. at 370-71.

The Regulations establish a "hierarchy" among medical opinions[8] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

With regard to a treating physician or psychiatrist,[9] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-

---

[8]     "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[9]     A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may

rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

In his Decision, the ALJ summarized the medical opinions of Drs. Hatton, DelBeato, and Rodriguez. Tr. at 20-21. As to Dr. Hatton, the ALJ assigned "some weight" to the GAF score assessed by Dr. Hatton but otherwise did not indicate the weight he assigned to the remainder of Dr. Hatton's opinion. Tr. at 20. Whether the ALJ actually considered and incorporated or considered and rejected the remainder of Dr. Hatton's opinion is not clear; this constitutes error on part of the ALJ. See Winschel, 631 F.3d at 1179 (stating that "the

ALJ must state with particularity the weight given to different medical opinions and the reasons therefor").

Regarding Dr. DelBeato's opinion, the ALJ noted that "[g]iven Dr. DelBeato's status as an independent and impartial examiner, as well as his qualifications as a clinical and forensic psychologist, . . . his opinion . . . carr[ies] great probative value." Tr. at 20.  The ALJ stated that "[w]hile [Plaintiff] certainly indicated more extreme limitations, Dr. DelBeato's opinion finds a reasonable level of limitation, based on [Plaintiff's] mildly abnormal mental status findings." Tr. at 20.  The ALJ, therefore, "afforded great weight to [Dr. DelBeato's] opinion and incorporated appropriate limitations into the [RFC]." Tr. at 20. The ALJ explained, "Specifically, the [RFC] eliminate[s] the performance of complex tasks and limit[s Plaintiff's] interaction with the public, coworkers, and supervisors to not more than an occasional basis." Tr. at 20.  Despite the ALJ saying that he afforded "great weight" to Dr. DelBeato's opinion, he did not address or readily account for Dr. DelBeato's full opinion.  Tr. at 20.  For example, Dr. DelBeato opined that Plaintiff had "a high risk to decompensate in a work environment" and that her "bipolar disorder . . . presents a significant barrier to stable employment." Tr. at 349 (emphasis added).  Similar to the ALJ's assessment of Dr. Hatton's opinion, it is not clear whether the ALJ actually considered the entirety of Dr. DelBeato's opinion, despite saying that he assigned the opinion "great weight." Tr. at 20.  This, too, is an error on part of the ALJ.

Moreover, the undersigned notes that the ALJ also assigned "great weight" to the opinion of a non-examining State agency psychological consultant, whose opinion was later affirmed by another State agency psychological consultant.  Tr. at 21 (referring to Tr. at

319-335, 346). The ALJ noted that "[t]he consultant found [Plaintiff] to have some moderate limitations, but to retain the ability to perform simple tasks, to be cooperative, and to be aware of work hazards." Tr. at 21 (referring to Tr. at 319-335, 346). A comparison of the State agency consultant's opinion and the opinion of Dr. DelBeato reveal different opinions as to the degree of Plaintiff's limitations. That the ALJ afforded both opinions "great weight" without discussing the apparent conflicts between the opinions frustrates judicial review.

Finally, with respect to Dr. Rodriguez, the ALJ summarized Dr. Rodriguez's opinions, noting that he "provided 20-minute supportive psychotherapy sessions on a near monthly basis, as well as prescription medications to treat [Plaintiff's] bipolar disorder."[10] Tr. at 21. Most pertinent to the issue raised by Plaintiff in this appeal, the ALJ stated that Dr. Rodriguez's "treatment notes routinely reference a severe impairment in work life, social life, leisure activities, family life, and home responsibilities. However, he rarely offers any further insight regarding the extent of [Plaintiff's] functional limitations. Therefore, his statements do not constitute medical opinions." Tr. at 21 (citations omitted).

As noted above, "[m]edical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Surely these treatment notes that show Plaintiff had moderate to severe limitations in certain functional areas fall within the fairly broad definition of a "medical

---

[10]     As noted above, the treatment notes appear to reflect that Plaintiff actually saw Alma Reif, MSN, ARNP, but that Dr. Rodriguez reviewed and approved each note. See Tr. at 338-39, 340-41, 364-65, 366-67, 368-69, 372-73, 374-75, 376-77.

-12-

opinion." The ALJ, however, erroneously found that these treatment notes do not constitute medical opinions, and he therefore summarily disregarded those opinions. Moreover, while the ALJ summarized other portions of the treatment notes, he did not indicate whether he was assigning the opinions therein any weight or whether he even considered those portions to be "medical opinions."  Upon review, the undersigned finds the ALJ erred with respect to the opinions of Dr. Rodriguez.  These errors are especially harmful in light of the fact these treatment notes spanned about one year and provide the most longitudinal assessment of Plaintiff's mental health status.

In sum, the ALJ erred in his assessment of the medical opinions in the record. Accordingly, the undersigned cannot find the Decision to be supported by substantial evidence.

## V.  Conclusion

After due consideration, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reconsider the medical opinions in the administrative transcript; clearly specify the weight assigned to the opinions and articulate the reasons therefor; and

        (B)      Take such other action as may be necessary to resolve this matter properly.

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 27, 2015.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

jlk
Copies to:
Counsel of Record